ALLIE G. PHIFER *v.* CROWN O. DIEHL ET AL.
[No. 32, October Term, 1938.]

*Decided September 17th, 1938.*

The cause was argued, as of the April Term, before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, and SHEHAN, JJ.

*Simon E. Sobeloff* and *Wm. Taft Feldman*, with whom was *Harry O. Levin* on the brief, for the appellant.

*G. C. A. Anderson*, with whom was *Clagett Bowie* on the brief, for the appellees.

The following order was passed *per Curiam*.

The court having concluded, upon reasons to be stated more at length in an opinion to be hereafter filed, that the Constitution, article 16, required that at least 2,500 signatures be obtained from county voters before June 1st, 1937, to the petition for a referendum, in addition to the signatures obtained from Baltimore City, and it being admitted by the appellants in their answer that fewer than 2,500 had been obtained from the counties by that date, it follows that there was a failure of compliance, which rendered the petition nugatory and prevents a referendum on it, that the writ of injunction against it should issue on the establishment of such a deficiency, and the demurrer to the bill for the injunction was properly overruled. It is therefore ordered that the order of the lower court appealed from be and it is hereby affirmed with costs.

URNER, J., delivered the opinion of the Court.

By chapter 306 of the Acts of 1937 provisions were made for regulating the practice of dentistry in Maryland. The Act was intended to become operative on the first day of June, 1937. Prior to that date a petition for a referendum on the measure was filed with the Secretary of State. If adequate under the Referendum Article of the Maryland Constitution, the petition would have validly suspended the operation of the Dentistry Act for thirty days, and, if duly supplemented by June 30th in conformity with the Constitution, would have required

the submission of the Act to the voters of the State at the election of 1938. But certain dentists, who are also taxpayers, brought this equity suit to restrain the proposed referendum on the ground that the petition invoking it was defective and invalid. The original defendants in the suit were the Secretary of State and the Board of Election Supervisors of Baltimore City. Subsequently a dentist who had promoted the referendum petition was allowed to intervene as a defendant, and he is the sole appellant from an order which overruled his demurrer to the bill of complaint.

Article 16 of the Constitution of Maryland includes the following provisions:

"Sec. 3 (a). The referendum petition against an Act or part of an Act passed by the General Assembly, shall be sufficient if signed by ten thousand qualified voters of the State of Maryland, of whom not more than half shall be residents of Baltimore City, or of any one County provided that any Public Local Law for any one County or the City of Baltimore, shall be referred by the Secretary of State only to the people of said County or City of Baltimore, upon a referendum petition of ten per cent. of the qualified voters of said County or City of Baltimore as the case may be, calculated upon the whole number of votes cast therein respectively for Governor at the last preceding Gubernatorial election.

"(b). If more than one-half, but less than the full number of signatures required to complete any referendum petition against any law passed by the General Assembly, be filed with the Secretary of State before the first day of June, the time for the law to take effect, and for filing the remainder of signatures to complete the petition shall be extended to the thirtieth day of the same month, with like effect."

The referendum petition filed before June 1st, 1937, in relation to the Dentistry Act, purported to be signed by 7,366 voters of Baltimore City and by 1,767 voters in various counties of the State. After June 1st, and before the expiration of that month, 1,050 additional signatures

from Baltimore City and 5,936 from the counties were procured. The decisive question, as indicated by the *per curiam* order heretofore passed, is whether the signatures to the petition before June 1st were sufficient in number and allocation to accomplish the suspension of the Act of 1937 for the initial thirty day period which the Constitution defined. If it was deficient for that purpose, the procurement and diversification of additional signatures after June 1st and on or before June 30th could not be regarded as a compliance with the prescribed conditions for suspending the operation of the statute. Unless "more than one-half" of the "full number" of signatures required to complete the referendum petition appeared upon it as filed with the Secretary of State before June 1st, the act became effective on that date under the Constitution and according to its own provision.

The "full number" of signers required for a completed referendum petition is ten thousand, of whom not more than half shall be residents of any one county or of Baltimore City. In consequence of the division and limitation thus directed, the "full number" of signers to be counted for Baltimore City or a single county is five thousand. It was the purpose of the prescribed diversification that the right to a state-wide referendum should depend upon a sufficiently extensive demand by voters of more than one of the designated political subdivisions of the state. That purpose is equally inherent in the provision under which the preliminary petition, if signed by "more than one-half" of the "full number" of voters eventually requisite, would have the effect of postponing for a month the operation of a general State law. It was, in our opinion, intended that the number of signatures necessary to make temporarily effective a referendum petition filed before the first day of June should conform to the same rule of territorial distribution which applies to the petition as completed. According to that rule not more than half of the number of signatures required for either the initial or the completed petition may be counted as

368

subscribed by residents of Baltimore City or of any one County. It was essential to the validity of the petition for a referendum on the Dentistry Act that it should be signed before June 1st, 1937, by more than five thousand voters duly allocated as to residence. The signing voters of Baltimore City could be considered at that time only to the extent of one-half of the full number of five thousand which might be finally apportioned to the city. Since less than a number exceeding twenty-five hundred voters of the counties signed the petition prior to June 1st, it was determined *per curiam* that such a deficiency rendered the petition nugatory for the purposes of the referendum which it proposed.

In view of that conclusion it is unnecessary to decide the questions argued on demurrer as to whether the bill of complaint is sufficiently definite in alleging other defects in the referendum petition, and in charging irregularities in the procurement and authentication of the signatures.

The cases cited in the appellant's brief in reference to the question discussed in this opinion were concerned with referendum or intiative provisions differing materially from the constitutional requirements by which our decision is governed.

For the reasons we have stated, the order appealed from was affirmed.