## TYLER *v.* SECRETARY OF STATE ᴇᴛ ᴀʟ.

[No. 148, Adv. September Term, 1962.]

398

*Decided September 11, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY, and MACGILL, specially assigned, JJ.

*Michael Paul Smith,* with whom were *Roger C. Duncan* and *Claude A. Hanley,* on the brief, for Herbert H. Tyler, appellant.

*Cullen H. Hormes* and *D. Heyward Hamilton, Jr.,* for James L. Llewellyn, et al., some of the appellees.

*Robert F. Sweeney, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the Secretary of State, appellee.

Submitted on brief by *John J. Caslin* for Board of Election Supervisors of Baltimore County, appellee.

MACGILL, Associate Judge of the Fifth Judicial Circuit, by special assignment, delivered the opinion of the Court.

This is an appeal from an order of the trial court sustaining a demurrer to the appellant's amended bill without leave to amend, and dismissing the bill.

There was introduced at the 1961 legislative session a bill, known as House Bill No. 496, which provided for payment by Baltimore County of the costs of transporting students at private schools and for the establishment of new bus routes to provide for such transportation. This bill was enacted into

law as Chapter 525 of the Acts of 1961, and was to take effect on June 1 of that year. Prior to the effective date of the Act, petitions were circulated, signed and submitted to the Secretary of State seeking a referendum on this bill by the voters of Baltimore County in the general election of November, 1962.

The appellant, on June 30, 1961, filed a bill seeking to have the Secretary of State enjoined from certifying the referendum petition to the Board of Supervisors of Elections of Baltimore County, and seeking to have said Board enjoined from placing Chapter 525 on the ballot to be voted on by the voters of the County in the election of November, 1962. The bill alleged, among other things, that many of the petitions contained the names of persons who were not registered as voters of Baltimore County and that, therefore, the affidavits accompanying these petitions, executed pursuant to the requirements of Section 4 of Article XVI of the Maryland Constitution and Chapter 673 of the Acts of 1914, and Chapter 739 of the Acts of 1957 were nugatory, and being so, there remained insufficient signatures on the valid petitions to bring Chapter 525 to a referendum.

The appellees, Llewellyn, Rothholz and Booth, who were interested in bringing the matter to a referendum, intervened as defendants in the proceedings and demurred to the bill. The trial court sustained this demurrer on the ground that the Secretary of State had the primary or initial duty of determining whether or not the petitions complied with the law and that, since such determination had not then been made, the injunction was prematurely sought. The demurrer was sustained with leave to file an amended bill after a determination by the Secretary of State as to the validity of the petitions.

Thereafter, the intervening defendants, pursuant to Rule 502 of the Maryland Rules of Procedure, asked the court to decide as a question of law whether or not the presence of two signatures, the signers of which were not qualified and registered voters of the precincts or districts set opposite their names, on a petition verified before a notary public by the person procuring it, ipso facto rendered invalid the remaining signatures on the petition. The court answered this question in the nega-

tive, and ruled that absent a showing that the affidavit was fraudulent, it could be treated as having probative value as to the remaining signatures, even though false as to the two.

Despite this ruling by the trial court, the appellant filed an amended bill of complaint alleging, among other things, that of the 1,224 separate papers comprising the petition for a referendum filed with the Secretary of State, 761 contained the name of at least one person who was not in fact a registered voter of the State of Maryland and Baltimore County, and that the appended affidavits to that effect, required by the Constitution, were, therefore, false and fraudulent and consequently none of the names signed to those papers were entitled to be considered and counted by the Secretary of State.

The intervenors demurred to this and the other allegations of the amended bill. The trial court, in giving his reasons for sustaining the demurrer, referred to his prior ruling on the special question of law and to a conference with counsel for the parties at which the Attorney General advised him that his office had no knowledge of any defects in the petitions except the inclusion of non-registered persons and counsel for the apellant conceded that they were not prepared to prove that a sufficient number of signatures were false or fraudulent to reduce the number of valid signatures below the required amount. The court then concluded that since the parties had had a full year in which to uncover specific instances of fraud and had failed to do so, no delay would be permitted by granting leave to further amend the bill of complaint.

The question raised by this appeal is the effect upon a referendum petition of the falsity, in part, of the statement in the accompanying affidavit of the circulator, made in the form prescribed by Section 4 of Article XVI of the Maryland Constitution, that the signers of the petition were registered voters of the State and County, as set opposite their names. It is undisputed that unless such falsity is construed to amount to fraud, or to give rise to a presumption of fraud, its effect reaches no further than to require the rejection of the signatures of those who were found not to be registered voters. Whether such falsity amounts to fraud or gives rise to a presumption of fraud depends, we think, upon a determination of

the intent behind the language employed in setting out the requirements of the affidavit.

Section 4 of Article XVI reads as follows:

> "A petition may consist of several papers, but each paper shall contain the full text of the Act or part of Act petitioned upon; and there shall be attached to each such paper an affidavit of the person procuring the signatures thereon that of the said person's own personal knowledge every signature thereon is genuine and bona fide, and that the signers are registered voters of the State of Maryland, and of the City of Baltimore, or County, as the case may be, as set opposite their names, and no other verification shall be required."

While the principle that provisions governing referendum petitions are to be liberally construed is generally accepted, it has been pointed out in *People v. Kelly,* 294 Mich. 503, 293 N. W. 865, that certain jurisdictions, including that state, have adopted the view that the referendum is a concession to an organized minority and a limitation upon the rights of the people.

The exercise of the right of referendum is drastic in its effect. The very filing of a petition, valid on its face, suspends the operation of any of a large class of legislative enactments and provides an interim in which the evil designed to be corrected by the law may continue unabated, or in which a need intended to be provided for, may continue unsatisfied. *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 A. 922; *First Continental v. Director,* 229 Md. 293, 300, 183 A. 2d 347; cf. *State ex rel. McNary v. Olcott,* 62 Ore. 277, 125 P. 303.

We believe that it is clear, in any case, that the stringent language employed in Section 4 of the Article shows an intent that those seeking to exercise the right of referendum in this State must, as a condition precedent, strictly comply with the conditions prescribed. *Beall v. State,* 131 Md. 669, 678, 103 A. 99; *Headley v. Ostroot* (S. Dak.), 76 N. W. 2d 474; and *Dawson v. Meier* (N. Dak.), 78 N. W. 2d 420. This construction is reinforced by the history of Chapter 673 of the Acts of 1914.

Reference to the Journal of Proceedings of the Senate of Maryland, January Session, 1914, page 200, shows that a bill was introduced, subsequently designated as Senate Bill No. 105, and entitled "An Act to amend the Constitution of Maryland by adding thereto a new Article, to be entitled 'Article XVI', providing for 'The Initiative and Referendum', and to provide for the submission of said Amendment to the qualified voters of the State for adoption or rejection. Section 6 of the proposed Article provided that:

> "A petition may consist of several papers, but each such paper shall contain the full text of the proposed law, or Constitutional amendment, or act, or part of act petitioned upon; and there shall be attached to each such paper an affidavit of the person procuring the signatures thereon that of the said person's own personal knowledge every signature thereon is genuine and bona fide, and that the said person verily believes the signers to be registered voters of the State of Maryland, and of the city of Baltimore, or county, as the case may be, as set opposite their names, and no other verification shall be required."

The bill was referred to the committee on amendments to the Constitution which thereafter reported it favorably but with a number of proposed amendments, chief among which was the elimination of the provision for the initiative. As to Section 6, it was proposed that the phrase, "the said person verily believes" be stricken, and that the phrase "to be" after the word "signers" be also stricken and in lieu thereof the word "are" to be inserted. (Page 1431 of the Journal.) These proposals were adopted and the section in question, as amended, was enacted by the General Assembly as Section 4 of Chapter 673 of the Laws of 1914, and, on acceptance by the voters, was embodied in Section 4 of Article XVI of the Constitution of this State.

It is established that the affidavit is an integral part of the referendum petition, that the one procuring the petitions or circulating them is the agent of the signers, and that the data required as to the qualifications of the signers is as important

as the signatures themselves. *Morford v. Pyle,* 53 S. D. 356, 220 N. W. 907; *Shields v. Wells,* 65 S. D. 552, 276 N. W. 246; *Chamberlain v. Bd. of Supervisors,* 212 Md. 342, 345, 129 A. 2d 121.

A referendum petition, to be effective, must contain not only the names of the requisite number of signers, but such signers must be registered voters, not only' of the state, but of the political subdivision if the law referred is local in its application. Obviously, with or without a verification under oath, the signatures of those found not to be registered voters cannot be taken into account. Furthermore, fraud in such instances need not be predicated solely on the execution of an affidavit. *People v. Brown* (Cal.), 226 P. 2d 647. The purpose of the requirement of the affidavit is to give a prima facie presumption of validity to the petition to which it is attached. If it is shown that the affidavit is fraudulent as to all or part of the petition it supports, the prima facie presumption of the validity of the petition must fail. *State ex rel. McNary v. Olcott, supra; State ex rel. Carson v. Kozer,* 105 Ore. 509, 210 P. 172; *In re Referendum Petition No. 31,* 68 Okla. 147, 172 P. 639; *Barkley v. Pool,* 103 Neb. 629, 173 N. W. 600.

Maryland is one of the few jurisdictions which exacts of the affiant not merely his belief, but his personal knowledge of the matters to which he makes oath. Personal knowledge is defined in *Black's Law Dictionary,* Third Edition, as: "Knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay." The question as to whether or not a person is a registered voter is not a matter of a legal conclusion. Cf. *Wood v. Byrne* (N. Dak.), 232 N. W. 303. It is a matter of fact, to be ultimately detemined by an examination of the lists of registered voters compiled and kept by the supervisors of elections. *In the Matter of Referendum Petition No. 119* (Okla.), 339 P. 2d 530. The crux of the matter, as we see it, is not so much the falsity of the statement in the affidavit that certain of the persons who signed the petition were registered voters, but the falsity of the statement that, of the affiant's own personal knowledge, such persons were registered voters.

This Court, in *Cahill v. Applegarth,* 98 Md. 493, 500, 56 A.

794, quoted with approval the statement, that to support an action for deceit or fraud, "It is only necessary to show that the defendant pretended to a knowledge which he must, according to principles of reason and good faith, have known that he did not possess at the time of the misrepresentation made." In Pomeroy's *Equity Jurisprudence,* Fifth Edition, Vol. 3, Sec. 888a, the author, citing *Tucker v. Osbourn,* 101 Md. 613, 61 A. 321, in addition to cases from other jurisdictions, stated that: "* * * if a statement of fact, actually untrue, is made by a person who honestly believes it to be true, but under such circumstances that the *duty* of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement, such misrepresentation may be fraudulent in equity, and the person answerable as for fraud; forgetfulness, ignorance, mistake, cannot avail to overcome the pre-existing *duty* of knowing and telling the truth." In the relatively recent case of *State ex rel. Helgerson v. Riif* (S. D.), 44 N. W. 2d 126, 129, involving the validity of a referendum petition, relied on by the appellees who were intervening defendants below, the court said that: "It recognizes that intent to deceive is not ordinarily susceptible of direct proof and in the absence of evidence to the contrary may be presumed where the falsity was necessarily known to the affiant."

We do not go so far as to hold, as we understand the appellant to contend, that proof of the falsity of the affidavit as to some signers renders invalid, in the sense of being a nullity, the entire paper or part of the petition it purports to verify. We hold, however, that if the circulator of a referendum petition in this State makes affidavit that, of his own personal knowledge, the signers of the petition which he has circulated are registered voters of the State, and the County, as set opposite their names when, in fact, he has no such personal knowledge, the falsity of his affidavit gives rise, at least, to a presumption of fraud. The Court stated that, "Whether such fraud be actual or constructive is immaterial. 'Constructive fraud,' sometimes called 'legal fraud,' is, nevertheless, fraud, although it rests more upon presumption and less upon furtive intent, than moral fraud." *Whitehurst v. Barnett,* 161 Md. 444, 449, 157 A. 737. Upon proof of the falsity of the affidavit, the prima

facie presumption of the validity of the petition, or a sheet thereof, ostensibly verified by the affidavit, must fail, along with all the signatures thereon, and the burden is cast upon the proponents of the referendum to affirmatively show that the remaining signatures on such petition or sheet thereof are genuine and bona fide and that the signers are registered voters as required by law. *Whitman v. Moore,* 59 Ariz. 211, 125 P. 2d 445; *Ellis v. Hall* (Ark.), 245 S. W. 2d 223; *In re Initiative Petition No. 142,* 176 Okla. 155, 55 P. 2d 455; *State ex rel. Carson v. Kozer, supra.*

To adopt a more lenient rule urged by the appellees who were intervenors below, would, in our opinion, frustrate the intent behind the language of the section discussed. *Newman v. Secretary of the Commonwealth* (Mass.), 162 N. E. 2d 291, 293. It would permit the circulator of a petition to do no more than to collect the signatures of those purporting to be registered voters, and to impose upon the Secretary of State, acting through the Attorney General's office, or the proponents of the referred law, the burden of weeding out the ineligible. The constitutional provision does not contemplate such a result.

> *Order reversed and case remanded for further proceedings not inconsistent with this opinion; costs to be paid by the intervening appellees.*