## FERGUSON *v.* SECRETARY OF STATE

[No. 345, September Term, 1967.]

*Decided April 10, 1968.*

The cause was argued before HAMMOND, C. J. and HORNEY, BARNES, FINAN and SINGLEY, JJ.

*Douglas R. Taylor* for appellant.

*Lewis A. Noonberg* and *Thomas A. Garland,* Assistant Attorneys General, with whom was *Francis B. Burch,* Attorney General, on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

In the 1967 Session of the General Assembly of Maryland House Bill 378 was enacted, which, among other things, provided for a graduated income tax in Maryland. The Governor signed the bill on April 14, 1967, and it became Chapter 142 of the Laws of 1967.

Immediately after the enactment of this law Courtland D. Ferguson (Ferguson), the appellant in this Court and petitioner below, together with the Fighting Taxpayers Association, the Free State Voters and other interested groups prepared and circulated a petition containing the full text of House Bill 378 in the counties and in Baltimore City. On May 31, 1967, prior to the effective date of Chapter 142 on June 1, 1967, Ferguson presented to C. Stanley Blair, Secretary of State, appellee in this Court and respondent below, petitions to refer Chapter 142 to referendum pursuant to Article XVI of the Maryland Constitution. The petitions contained 20,828 signatures by Ferguson's count and on June 30, 1967, petitions for 10,863 signatures by Ferguson's count were also presented to the Secretary of State. Of the signatures presented the Secretary of State found that 28,970 were apparently valid.[1]

---

1. There was no dispute that the *number* of signatures filed on May 31, 1967, was sufficient to suspend Chapter 142 until July

512

Article XVI of the Maryland Constitution, entitled "The Referendum" provides in relevant part as follows:

"Section 2. When Laws to take effect; effect of filing of referendum petition.

No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it contain a Section declaring such law an emergency law and necessary for the immediate preservation of the public health or safety, and passed upon a yea and nay vote supported by three-fifths of all the members elected to each of the two Houses of the General Assembly; provided, however, that said period of suspension may be extended as provided in Section 3 (b) hereof. If before said first day of June there shall have been filed with the Secretary of the State a petition to refer to a vote of the people any law or part of a law capable of referendum, as in this Article provided, the same shall be referred by the Secretary of State to such vote, and shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election held throughout the State for Members of the House of Representatives of the United States. An emergency law shall remain in force notwithstanding such petition, but shall stand repealed thirty days after having been rejected by a majority of the qualified electors voting thereon; provided, however, that no measure creating or abolishing any office, or changing the salary, term or duty of any officer, or granting any franchise or special privilege, or creating any vested right or interest, shall be enacted as an emergency law. *No law making any appropriation for maintaining the State Government,* or for

1, 1967, and that the *number* of signatures filed before July 1, 1967, with the signatures on file, was sufficient to refer Chapter 142 to referendum if the affidavit complied with the provisions of Section 4 and the law was referable at all under Section 2 of Article XVI.

maintaining or aiding any public institution, not exceeding the next previous appropriation for the same purpose, *shall be subject to rejection or repeal under this Section.* The increase in any such appropriation for maintaining or aiding any public institution shall only take effect as in the case of other laws, and such increase or any part thereof specified in the petition, may be referred to a vote of the people upon petition.

\* \* \*

"Section 4. Form of petition: verification of signatures.

A petition may consist of several papers, but each paper shall contain the full text of the Act or part of Act petitioned upon; *and there shall be attached to each such paper an affidavit of the person procuring the signatures thereon that of the said person's own personal knowledge every signature thereon is genuine and bona fide, and that the signers are registered voters of the State of Maryland, and of the City of Baltimore, or County,* as the case may be, as set opposite their names, and no other verification shall be required." (Emphasis supplied.)

The affidavit on all of the petitions was as follows:

"AFFIDAVIT

STATE OF MARYLAND, ............ COUNTY, to wit:

I HEREBY CERTIFY that on this..........day of ............, 1967, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County aforesaid, personally appeared ........ ............ and made oath in due form of law that he procured the signatures on the aforegoing Petition to refer General Assembly of Maryland HB 378, Legislative Session 1967, to a vote of the registered voters of Maryland for their approval or rejection, and that of his own personal knowledge every signature thereon is genuine and bona fide, and *that to the best of his*

*knowledge, information and belief,* the signers are registered voters of Maryland.

AS WITNESS my hand and Notarial Seal.

. . . . . . . . . . . . . . . . . . . . . . .
Notary Public

My Commission Expires . . . . . . . . . . . . ." (Emphasis supplied.)

The Secretary of State having declined to certify and validate the petitions, Ferguson on June 22, 1967, filed a petition for a writ of mandamus in the Circuit Court for Anne Arundel County to require the Secretary of State to do this. The Secretary of State answered the petition alleging that the petitions did not comply with the requirements of Section 4 of Article XVI of the Maryland Constitution and, in any event, Chapter 142 embodies a tax provision, the income from which supports the budget of the State for the fiscal year 1967-1968, and as such could not be referred to referendum under the provisions of Article XVI.

On July 17, 1967, the Secretary of State filed a motion for summary judgment supported by the affidavit of James P. Slicher, Director of the Department of Budget and Procurement of the State, setting forth the financial details in regard to the budget of the State for the fiscal year 1967-1968, and appropriations for the budget which were in part predicated upon the receipt of $183,144,000 from the income tax.

After argument, the Circuit Court (Sachse, J.) rendered an oral opinion indicating that the petitions did not comply with the provisions of Section 4 of Article XVI in that the affidavit did not state that the signers were registered voters upon the personal knowledge of the affiant, but rather to the best of the affiant's "knowledge, information and belief," and further that Chapter 142 was not referable under Article XVI in any event. On September 15, 1967, the trial judge signed an order granting the motion of the Secretary of State for summary judgment and requiring Ferguson to pay the costs. From that order an appeal was duly perfected to this Court.

We are of the opinion that the affidavit to the petitions did not comply with the mandatory requirements of Section 4 of

Article XVI of the Maryland Constitution as a result of which the petitions were fatally defective. The Secretary of State was correct in declining to certify and validate these petitions and hence the summary judgment for the Secretary of State was properly granted by the Circuit Court. We do not reach the interesting question in regard to whether or not Chapter 142 may be referred to referendum under Article XVI.

It is clear from the language of Section 4 of Article XVI that it is mandatory that an affidavit be attached to each of the several papers making up the petition for referendum of the person procuring the signatures that "of the said person's *own personal knowledge*" (1) every signature on the paper is genuine and bona fide, and (2) that the signers are registered voters of the State and City of Baltimore or County as set opposite their names. Although the affidavit in the present case fully complies with the requirements of Section 4 as to the first mandatory requirement, it clearly fails in regard to the second mandatory requirement, i.e., to state that of the affiant's personal knowledge the signers are registered voters of the State and City of Baltimore or County as set opposite their names. The second requirement is stated to be on "knowledge, information and belief" rather than on "personal knowledge."

We indicated in *Tyler v. Secretary of State,* 229 Md. 397, 184 A. 2d 101 (1962), that there must be a strict compliance with the mandatory provisions of Section 4 of Article XVI. Judge Macgill (specially assigned), for the Court stated in *Tyler*:

> "We believe that it is clear, in any case, that the stringent language employed in Section 4 of the Article shows an intent that those seeking to exercise the right of referendum in this State must, as a condition precedent, strictly comply with the conditions prescribed." (229 Md. at 402, 184 A. 2d at 104.)

In arriving at a determination of the legislative intent the history of Chapter 673 of the Acts of 1914, by which Article XVI was presented as an amendment to the Maryland Constitution, should be considered. The original provision of what is now Section 4 contained the language of the present Section 4

in regard to the signatures but provided that the affidavit of the person procuring the signatures could state as to the voting status that "said person *verily believes* the signers to be registered voters of the State of Maryland, and of the City of Baltimore or County, as the case may be, as set opposite their names." (Emphasis supplied.) This language, however, was changed by the General Assembly after introduction of the proposed legislation, so that the words "the said person verily believes" were stricken as was the phrase "to be" after the word "signers", and in lieu of the words "to be" the word "are" was inserted so that the language was finally established as it presently appears in Section 4. From this legislative history we concluded in *Tyler* that:

> "It is established that the affidavit is an integral part of the referendum petition, that the one procuring the petitions or circulating them is the agent of the signers, and that the data required as to the qualifications of the signers is as important as the signatures themselves. (Citing cases.)
>
> * * *
>
> "Maryland is one of the few jurisdictions which exacts of the affiant not merely his belief, but his personal knowledge of the matters to which he makes oath. Personal knowledge is defined in *Black's Law Dictionary*, Third Edition, as 'Knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' The question as to whether or not a person is a registered voter is not a matter of a legal conclusion. Cf. *Wood v. Byrne* (N.Dak.), 232 N. W. 303. It is a matter of fact, to be ultimately determined by an examination of the lists of registered voters compiled and kept by the supervisors of elections." (229 Md. at 403-04, 184 A. 2d 104-05.)

In *Tyler* the question involved was the falsity of the statement in the affidavit (in proper form) that the affiant of his personal knowledge swore that the signers were registered voters of the State of Maryland when in fact at least one was not. We

held that this at least raised a presumption of fraud which cast the burden on the proponents of the referendum to show that the remaining signatures were genuine and bona fide and that the signers were registered voters as required by law. The case was remanded for this determination. It is clear to us, however, that the principles enunciated in *Tyler* are equally applicable to the present case and indicate that the affidavit used in this case is fatally defective.

Ferguson earnestly urges upon us that "personal knowledge by the affiants of the signer's registration is impossible" and therefore could not have been intended as a mandatory part of the required affidavit. As pointed out by the Court in *Tyler*, however, it is not at all impossible to obtain such personal knowledge by an examination of the lists of registered voters, and the legislative history of Chapter 673 of the Acts of 1914 makes it quite clear that the General Assembly rejected the original language permitting the affidavit to be made on "belief" in this regard and changed it to the present requirement of "personal knowledge."

No doubt the requirement of "personal knowledge" in regard to the signer's registration does add a substantial difficulty to the obtention and preparation of the required petitions for referendum, but this Court cannot by construction eliminate a mandatory provision deliberately adopted by the General Assembly requiring that the affidavit in regard to the signer's registration be made on the affiant's personal knowledge. See *Buchholtz v. Hill*, 178 Md. 280, 286, 13 A. 2d 348, 351 (1940). If the burden is too heavy, the remedy is by an appropriate amendment to Article XVI.

As there have been a number of instances in the past in which Acts of the General Assembly *have been referred* to the people pursuant to Article XVI, it is rather apparent that it is not impossible to fulfill the requirement of the affidavit of personal knowledge for the registration of the signers.

> *Order affirmed, the costs to be paid*
> *by the appellant.*