RUSSELL H. GITTINGS ET AL. *v.* THE BOARD OF SUPERVISORS OF ELECTIONS FOR BALTIMORE COUNTY ET AL.

[No. 629, September Term, 1977.]

*Decided February 10, 1978.*

The cause was argued before MOYLAN, LISS and MACDANIEL, JJ.

Submitted on brief by *G. Darrell Russell, Jr.*, for appellant.

*W. Lee Thomas* for appellee, Arlen Realty, Inc. *John H. Hessey, IV*, with whom were *Mahlon W. Hessey* and *Hessey & Hessey* on the brief, for appellee, Grand Lodge of Ancient, Free and Accepted Masons of Maryland.

LISS, J., delivered the opinion of the Court.

On November 1, 1976, the Baltimore County Council enacted Bill No. 110-76, which adopted the official Comprehensive Third Councilmanic District Zoning Map for Baltimore County. Among the changes approved by that map was the rezoning of a tract of 409 acres of land known as "Bonnie Blink" (described by the Council as Issue 3-92), located to the north of Shawan Road, west of York Road, and east of Interstate 83. Several different zoning classifications were assigned to portions of the tract, namely, BM-CT (Commercial), MLR (Manufacturing Light Restricted), DR-1, DR-2, DR-3.5 (all Residential), and RC-4 (Rural Conservation).

Appellants Russell H. Gittings and others, as aggrieved taxpayers and voters of Baltimore County, sought to bring that portion of Bill No. 110-76 which rezoned the Bonnie Blink tract to referendum before the voters of Baltimore County. The Bonnie Blink tract is owned by the appellee, Grand Lodge of Ancient, Free and Accepted Masons of Maryland (hereafter, Grand Lodge); the appellee, Arlen Realty, Inc. (hereafter, ARI) is a contract purchaser of a portion of the tract.

The power of the people to bring to referendum a law passed by the General Assembly of Maryland and the procedure to exercise that power is found in the Maryland Constitution, Article XVI. A similar power and procedure to bring to referendum any enacted law or ordinance of the Baltimore County Council is found in the Baltimore County Charter, Section 309 (a), Baltimore County Code (1968, 1975 Cum. Supp.). The provisions of Art. XVI of the Constitution of the State of Maryland and § 309 (a) of the Baltimore County Charter are essentially the same. The only difference relevant to the dispute before us is that Art. XVI designates the Secretary of State as the official to receive petitions for referendum; whereas, § 309 (a) designates the Board of Supervisors of Elections of Baltimore County (hereafter, Board) as the agency to receive such petitions.

The pertinent portion of § 309 (a) provides:

"The people of Baltimore County reserve to themselves the power known as 'The Referendum,' by petition to have submitted to the registered voters of the county, to approve or reject at the polls, any enacted law or ordinance or part of any such law or ordinance of the county council. The referendum petition against any such law or ordinance shall be sufficient if signed by ten per centum of the qualified voters of the county calculated upon the whole number of votes cast in the county for Governor at the last preceding gubernatorial election. Such petition shall be filed with the board of supervisors of elections of Baltimore County within forty-five days after the enactment of the law to be referred to the voters at the next general election. If such a petition is filed as aforesaid, such law or ordinance or part thereof to be so referred shall not take effect until thirty days after its approval by a majority of the qualified voters of the county voting thereon at the said next general election; provided, however, that if more than one-half but less than the full number of signatures required to complete any referendum petition against such law or ordinance

to be filed within forty-five days from the date of its enactment, the time for the law to take effect and the time for filing the remainder of signatures to complete the petition shall be extended for an additional thirty days with like effect."

It is conceded by all parties that the number of votes cast in Baltimore County in the gubernatorial election of 1974 was 185,240 and that the valid signatures of a total of 18,524 qualified voters was ultimately required to petition the Bonnie Blink rezoning to referendum. In order to avail themselves of the 30 day grace period authorized by § 309 (a), it is admitted by the appellants that they were required to file by no later than December 16, 1976 (i.e., 45 days after the enactment of Bill No. 110-76), petitions signed by a minimum of one-half of the required number of qualified voters — or 9262 signatures. Petitions were seasonably filed which allegedly contained the valid signatures of 9523 qualified voters.

After the petitions had been filed, the Board undertook to examine the signatures on the petitions in order to determine whether they were in fact those of duly qualified voters of Baltimore County and therefore valid. Appellants have raised no issue as to the authority and duty of the Board to make such a determination. We note that the Court of Appeals had a similar situation before it in *Barnes v. State*, 236 Md. 564, 204 A. 2d 787 (1964), in which it was argued that the Secretary of the State of Maryland, who received petitions as did the Board in this case, did not have the authority to decline to accept referendum petitions on the ground of the invalidity of some of the signatures. The facts in *Barnes* show that the Secretary examined the petitions filed with him and rejected a number of signatures appended thereto which left the first half of each referendum petition short of the required number. On the basis of this determination, the Secretary declined to certify the law to be placed on the ballot for referendum. Judge Oppenheimer, speaking for the Court, held that since the Secretary of State was the official designated by Art. XVI of the Constitution to receive the petitions that he acted within his powers and duties in making

the initial determination as to whether the requisite number of valid signatures were appended. In neither Art. XVI nor in § 309 (a) is the power and duty to make the initial determination explicitly spelled out; but, by analogy, on the basis of the holding in *Barnes,* we conclude that the Board — the agency designated by the Baltimore County Charter to receive the petitions — has the responsibility to make the initial determination as to the validity of signatures on referendum petitions.

In the exercise of its responsibility, the Board determined that 804 of the signatures were invalid; some of the signatures were of persons who were not qualified voters of Baltimore County; other signatures were illegible and therefore could not be identified as qualified voters; and, finally, there were instances where the same person had signed more than one time.[1] Appellants do not contest the factual conclusions of the Board as to the invalidity of these signatures. Subtracting the 804 invalid signatures from the 9523 filed, the petitions had appended to them a total of only 8719 valid signatures, i.e., 543 less than the 9262 needed to comply with the requirements of § 309 (a) of the County Charter.

Appellants have raised three issues in their brief, but we believe — as did the trial court — that the first issue is dispositive of the controversy in this matter. That issue, as stated by the appellants, is that "the court should have granted the summary judgment in favor of the plaintiff as against the defendant for reasons of equity." We are constrained to admit that we find it difficult to comprehend the contentions of the appellants who characterize their own position as being supported by a "somewhat obtuse vein of argument." As we perceive their argument, they admit that they failed to comply with the provisions of § 309 (a) of the County Charter but suggest that equity requires that they

---

1. Appellees, below and in their brief, raised additional objections to the validity of other signatures on the petitions, but as we believe the issue of the failure of the appellants to secure the required number of valid signatures to be dispositive of this case, we do not consider these issues in this opinion.

be permitted another shot at compliance. We have no right under the law to grant such a dispensation.

The leading case on this facet of the law is *Tyler v. Secretary of State*, 229 Md. 397, 184 A. 2d 101 (1962), which involved an effort to enjoin the putting to referendum a law which provided for payment by Baltimore County of the costs of transporting students at private schools. Facially, sufficient signatures had been timely submitted to the Secretary of State. Plaintiff's Bill alleged among other things that many of the petitions included the names of persons who were not registered voters of Baltimore County; that, therefore, the affidavits which accompanied the petitions were nugatory; and for this reason, there were insufficient signatures to bring the law to referendum. The Court pointed out that certain jurisdictions have adopted the view that "the referendum is a concession to an organized minority and a limitation upon the rights of the people." *Id.* at 402. *See People v. Kelly*, 294 Mich. 503, 293 N. W. 865 (1940). The Court went on to state:

> "We believe that it is clear, in any case, that the stringent language employed in Section 4 of [Article XVI of the Maryland Constitution which was translated substantially into Section 309 of the Baltimore County Code] shows an intent that those seeking to exercise the right of referendum in this State must, as a condition precedent, strictly comply with the conditions prescribed." *Id.* 229 Md. at 402.

*Beall v. State*, 131 Md. 669, 103 A. 99 (1917); *Headley v. Ostroot*, 76 N.W.2d 474 (S. Dak. 1956); *Dawson v. Meier*, 78 N.W.2d 420 (N. Dak. 1956).

In a succession of cases since *Tyler*, the Court of Appeals has held that the language of Art. XVI is mandatory and must be strictly complied with by those seeking to avail themselves of the right of referendum. In *Ferguson v. Secretary of State*, 249 Md. 510, 240 A. 2d 232 (1968), the Court held as mandatory those provisions of Art. XVI, § 4 of the Maryland Constitution which require that there be attached to each of the papers making up a petition for referendum an affidavit

of the person procuring the signatures stating that to his own personal knowledge every signature is genuine and bona fide and that of a registered voter. In *Ferguson,* affidavits made on knowledge, information, and belief rather than on personal knowledge were held to be so defective as to invalidate the petitions for referendum. In response to the petitioners' complaint that compliance with the constitutional requirement was impossible of fulfillment, the Court stated that "this Court cannot by construction eliminate a mandatory provision deliberately adopted by the General Assembly requiring that the affidavit in regard to the signer's registration be made on the affiant's knowledge. See *Buchholtz v. Hill,* 178 Md. 280, 286, 13 A. 2d 348, 351 (1940). If the burden is too heavy, the remedy is by an appropriate amendment to Article XVI." *Id.* 249 Md. at 517.

In *Abell v. Secretary of State,* 251 Md. 319, 247 A. 2d 258 (1968), the Court of Appeals held that the language as to the time when referendum petitions must be filed was mandatory, and it approved the action of the Secretary of State in refusing to refer to referendum a statute providing for the gradual abolition of slot machines because the petitions were not filed in strict compliance with the provisions of Art. XVI, § 2.

The earlier case of *Phifer v. Diehl,* 175 Md. 364, 1 A. 2d 617 (1938), concerned an act regulating the practice of dentistry in Maryland which was sought to be referred to referendum. A timely petition was presented, signed by over 7000 persons, most of whom lived in Baltimore City. Less than an additional 2500 were residents of Baltimore County. At the time of this controversy, the Constitution of Maryland required the filing of signatures of at least 10,000 voters of whom no more than one-half could be residents of Baltimore City or any county. The Court concluded that as the petitioners had failed to secure the number of signatures of county voters required by the provisions of the Constitution, this failure rendered the petition nugatory and precluded it from being referred to referendum.

It is understandably disappointing to the residents of Baltimore County who sought to petition this issue to

referendum that they are foreclosed by this decision from an opportunity to submit the issue to the electorate of the county. However, where a group of the citizens of the county seek to challenge a decision made by the lawfully designated representatives of the entire body politic, they must strictly adhere to those provisions of the law which grants to them the concession of the referendum. Where, as in this case, they fail to meet the constitutional and statutory requirements which authorize the exercise of the privilege granted, the proposed referendum must fail.

*Judgment affirmed.*
*Costs to be paid by appellants.*