REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0690

September Term, 2014

―――――――――――――

JANE GRAY, ET AL.

v.

HOWARD COUNTY BOARD
OF ELECTIONS, ET AL.

―――――――――――――

Krauser, C.J.
Wright,
Kenney, James A., III
   (Retired, Specially Assigned),

JJ.[1]

―――――――――――――

Opinion by Krauser, C.J.

―――――――――――――

Filed: August 28, 2014

[1]Judge Andrea Leahy did not participate
in the Court's decision to report this opinion
pursuant to Md. Rule 8-605.1.

This expedited appeal[1] requests that we review the refusal of appellee,[2] Guy C. Mickley, the Director of the Board of Elections of Howard County (hereinafter the "Election Director") to certify for referendum, on the 2014 Ballot, certain provisions of Howard County Bill Number 32-2013, as demanded by appellants'[3] petition for referendum. That bill approved and adopted the County's 2013 Comprehensive Zoning Plan.

In rejecting appellants' certification request, the Election Director explained, in a letter, that, although their petition contained the necessary number of valid signatures, he was denying the certification because the petition failed to meet "all of the legal requirements" set forth in section 6-201(c)(2)(i) of the Election Law Article of the Maryland Code. Specifically, it did not, he pointed out, provide a "fair and accurate summary" of the portions of the ordinance at issue, as required by law. We agree and shall affirm.

## I.

The Howard County Zoning Board periodically submits to the Howard County Council a comprehensive zoning plan for its review and approval. To enact that plan into law, the Howard County Council must pass an ordinance approving and adopting it, and the

---

[1] Appellants filed this appeal pursuant to Md. Code (2002, 2010 Repl. Vol.), § 6-209(a)(3) of the Election Law Article. The deadline for appellants' referendum to appear on the ballot is August 18, 2014, a deadline that is fourteen days after oral argument was heard in this Court.

[2] The other appellees are the Howard County Board of Elections; Normandy Venture Limited Partnership; Maple Lawn Farm, Inc.; David Moxley; Christopher Murn; Sharfqet Ashai; Raffat S. Ashai; Rajesh Chopra; Kirti Chopra; Jeanne C. Hoddinott; and Estate of Gunther W. Tertel and Robert L. Fila, P.R.

[3] Appellants are Jane Gray, Frederick Gray, Allan Schneider, Lisa Markovitz, and Citizens Working to Fix Howard County.

County Executive must sign the ordinance into law. If any of the citizens of Howard County wish to challenge the law, or any portion thereof, they must submit a referendum petition, signed by a specified percentage of the "qualified voters"[4] of Howard County, to the County's Board of Elections that, among other things, "fairly and accurately" describes the aspects of the law that they are challenging. Md. Code (2002, 2010 Repl. Vol.), §§ 6-201(a)(2), (c)(2) of the Election Law Article ("E.L.").

If the petition "satisfies all requirements established by law" the Election Director "shall certify that the petition process has been completed" and certify that the "question has qualified to be placed on the ballot." E.L. § 6-209. Thereafter, "the law or part thereof to be referred [to referendum] shall not take effect until thirty days after its approval by a majority of the qualified voters of the County voting thereon at the next ensuing election held for members of the House of Representatives of the United States." Howard County Charter, § 211(a). If the Election Director determines that the petition does not comply with all legal requirements and that, consequently, the substance of which shall not be certified for referendum, the "sponsor" of the petition must be "immediately" notified of that determination. E.L. § 6-209(a)(2).

---

[4]The Howard County Charter provides: "The referendum petition against any such law shall be sufficient if signed by five per centum of the qualified voters of the County calculated upon the whole number of votes cast in the County for Governor at the last preceding gubernatorial election." Howard County Charter, § 211(a).

## II.

On August 6, 2013, the Howard County Council enacted Ordinance 32-2013, which adopted the 2013 Comprehensive Zoning Plan of Howard County. Ten days later, appellant Citizens Working to Fix Howard County (whose officers included appellants Jane Gray and Lisa Markovitz) submitted a proposed referendum petition to the Election Director, who responded, in a letter, that he had determined that "the front page formatting of the petition" complied with the "technical" legal requirements but stressed that "a fair and accurate summary [was] required on the back of the petition that includes the substantive provisions of the law being referred" to referendum. He then concluded his letter by noting that his office was "making no judgment as to whether the information in the summary presented fully satisfies all legal requirements."

On October 4, 2013, appellants submitted 3,454 of the required 5,390 signatures to the Board of Elections for approval. Two weeks later, on October 21, 2013, the Election Director wrote to appellants, informing them that the signatures they had filed had been validated and that the amount of those signatures met the threshold for extending the deadline for submitting the rest of the signatures for the certification of their petition.[5]

---

[5]Section 211(a) of the Howard County Charter, the section governing the referendum process, provides: "[I]f more than one-half but less than the full number of signatures required to complete any referendum petition against such law be filed within sixty days from the date it is enacted, the time for the law to take effect and the time for filing the remainder of signatures to complete the petition shall be extended for an additional thirty days." The threshold for approval in Howard County at the time the signatures were filed was 5,390 valid signatures from Howard County voters. As a result

3

After appellants had tendered the required number of signatures, within the prescribed time period, the Election Director, in a letter dated November 26, 2013, confirmed that appellants had met the signatory requirement for certification but apprised them that, "[a]fter a board meeting and on advice of legal counsel," he had "determined" that their petition did "not meet all legal requirements as set forth in 6-201(c)(2)(i) of the election law, which states: 'a fair and accurate summary of the substantive provisions of the proposal' is required if the petition seeks to place a question on the ballot." That being so, he informed appellants that he could not approve certification.

On December 5, 2013, appellants filed a petition for judicial review,[6] in the Circuit Court for Howard County, challenging the Election Director's determination "that the referendum petition on parts of CB 32-2013 did not contain a 'fair and accurate summary of the substantive provisions of the proposal'" and his refusal to certify their petition.

The Board of Elections, on December 23, 2013, moved to consolidate that petition with two other petitions for judicial review that had been filed by several of the appellees, challenging the Board of Elections' determination as to the numerical sufficiency of the signatures presented,[7] and with a declaratory judgment action they had filed.[8] That motion

_____

of their initial filing, appellants were given an additional thirty days from the time they filed the signatures to complete the collection process.

[6]Appellants' petition for judicial review was originally identified as Case No. 13-C-13-097213.

[7]Appellees Shafqet and Riffat A. Ashai; Rajesh and Kirti Chopra; Jeanne C. Hoddinott; Normandy Venture Limited Partnership; Maple Lawn Farms, Inc.; David

4

was granted on January 16, 2014, and the now consolidated case was specially assigned to the Honorable John H. Tisdale.

Among the motions filed in the circuit court, by the Board of Elections and its Director, was a motion for summary judgment, with an affidavit from the Election Director attached. In the affidavit, the Election Director explained why he found the summary of the specific parts of the ordinance challenged by appellees was not "fair and accurate," as required by law:

\* \* \*

7.      Prior to meeting with counsel and the Board of Election members, I reviewed the Petition to determine whether it met all legal requirements as set forth in Md. Code Ann., Election Law Art., § 6-201(c)(2)(i). As part of my due diligence, I compared the language contained in CB32-2013, 2013 Comprehensive Zoning Plan of Howard County, with the language contained in the summary on the reverse side of the Petition. I concluded that the language contained on the reverse side of the Petition signature page was not

_____

Moxley; and Estate of Gunther W. Tertel and Robert L. Fila, P.R., filed two petitions for judicial review in the Circuit Court for Howard County. Their first petition sought a review of the decision by the Election Director, dated October 21, 2013, that appellants' had submitted "sufficient valid signatures to continue gathering signatures" in their effort to have their petition certified. That action for judicial review was originally identified as Case No. 13-C-13-96866.

Their second petition for judicial review sought review of the Election Director's initial determination that appellants' "proposed petition"complied with the "technical" legal requirements and of the Election Directors' determination that appellants had collected a sufficient number of signatures to satisfy the signatory requirement needed for certification of their petition. That action for judicial review was originally identified as Case No. 13-C-13-97220. Appellees have since dismissed their appeals in both actions without waiving their right to participate in the appeal filed by appellants.

[8]The declaratory judgment action, which is not before us, was originally identified as Case No. 13-C-097230.

5

a fair and accurate summary of the Bill because the summary made reference to specific parcels of land which were not included in the Bill itself. Specifically, under the section labeled "other," the summary provided as follows:

> Carry-over of existing zoning as of July 24, 2013 for Normandy Shopping Center (tax-map-18; grid-19, parcel-75, lots-A-C) and 12540 Clarksville Pike, Clarksville, into 2013 Comprehensive Zoning Plan.

8.     My research failed to reveal any reference to Normandy Shopping Center and 12540 Clarksville Pike.  In my opinion, inclusion of those properties mislead potential signers of the Petition because Bill 32-2013 did not address those properties but the summary would lead a potential signer to believe it did.

9.     Opponents of the Petition raised a variety of other issues.  I did not address those issues because I already concluded that the summary was not accurate for the reasons stated above.

* * *

Before the circuit court heard argument on that and other pending motions, appellants filed four different interlocutory appeals in this Court and four separate petitions for writ of certiorari in the Court of Appeals with respect to actions taken by the circuit court in dealing with their petitions.  This Court eventually dismissed each of these appeals, and the Court of Appeals, in turn, denied two of appellants' four certiorari petitions.  The remaining two petitions were ultimately dismissed by that Court on the grounds that it lacked appellate jurisdiction in absence of a final judgment or appealable interlocutory judgment or collateral order.  *Gray v. Howard Cnty. Bd. of Elections*, 437 Md. 611 (2014).

Notwithstanding the numerous unwarranted delays engendered by these appellate

6

court filings, Judge Tisdale was ultimately able to address the three consolidated petitions for review pending before him, in a memorandum opinion dated May 28, 2014, following a hearing. In that opinion, he pointed out a number of deficiencies in appellants' summary of the contested portions of the ordinance, including the inaccuracies alleged by the Election Director in his affidavit attached to the Board of Elections' motion for summary judgment. He characterized appellants' petitionary description of certain provisions of the ordinance they were challenging as either "not accurate," "misleading," "lacking in precision" or "clarity," and as "intended to create an emotional reaction" from potential signatories. He therefore concluded that "[t]aken as a whole, the attempt to summarize the portions of the Ordinance for the referendum [fell] well short of the fair and accurate standard."

**III.**

Before we address the question of which standard of review to apply here, we must first determine to what it should apply—the decision of the circuit court or that of the Election Director. But the answer to that question need not delay us, as it is well-settled law that we are to review the decision of the administrative agency that the circuit court considered. *Spencer v. Maryland State Bd. of Pharmacy*, 380 Md. 515, 523–24 (2004).

We now turn to the question of which standard of review is applicable, a critical question here, as that determination may, as the parties are well aware, affect the outcome of this appeal. To determine that, we must decide if the administrative decision before us addressed a question of law or one of fact or a combination or both. If it is "a pure question

7

of law," as appellees contend, then we may be impelled to conclude that the Election Director, contrary to what appellants allege, did not err in failing to make any specific findings in rendering his decision other than the one he did—which was that the petition did not satisfy the legal requirement that it set forth a "fair and accurate" summary of the ordinance in dispute.

To determine whether the summary provided by the petition was "fair and accurate," the Election Director had to do no more than ascertain whether the petition fairly and accurately described and interpreted certain provisions of the county law. Whether the Election Director correctly did so is plainly, in our view, a question of law, a question for which we may substitute our judgment for that of the Election Director. *Id.* at 529.

## IV.

Once the "verification and counting" of the signatures contained in the petition has concluded, the Election Director is required to determine "whether the petition has satisfied all other requirements established by law." E.L. § 6-208(a)(2). If the Election Director determines that the petition has not satisfied those legal requirements, he must "immediately notify the [petition's] sponsor of that determination, including any specific deficiencies found." *Id.* But how "specific" must these "deficiencies" be?

Section 6-206(c)(1)–(6) of the Election Law Article lists six deficiencies, any of which, if found by the Election Director, would require him to decline certification. It is the sixth deficiency listed in that section of the Election Law Article which the Election Director

8

relied upon in declaring appellants' petition deficient. That section states that a petition is deficient "if . . . the petition has failed to satisfy some other requirement established by law." E.L. §6-206(c)(6). The "requirement established by law," which the Election Director determined that petition failed to satisfy, can be found in E.L. § 6-201(c)(2)(i), which requires that a referendum petition contain a "fair and accurate summary of the substantive provisions of the proposal."

If the petition does not contain a "fair and accurate summary of the proposal," and thereby fails to satisfy the legal requirements for placing a matter on the ballot, the Election Director is required to notify the petitioner of that specific deficiency (which is exactly what Mr. Mickley did in this case). By identifying which "specific deficiency," that is, the specific legal requirement that had not been met, the Election Director did, in fact, comply with the applicable statutory requirements.

Moreover, the Election Director did ultimately provide appellants with a more specific description of the deficiency in an affidavit he filed with the court below in support of a motion for summary judgment. In that affidavit, the Election Director stated that he concluded that appellants' summary was not fair and accurate because "the summary made reference to specific parcels of land which were not included in the Bill itself." "In my opinion," continued the Election Director, "inclusion of those properties mislead potential signers of the Petition because Bill 32-2013 did not address those properties but the summary would lead a potential signer to believe it did." Thus, even if the Election Director should

9

have been more specific as to the deficiency he found, as appellants maintain, the Election Director ultimately supplemented his conclusion and thereby rendered appellants' claim nugatory.

**V.**

The Maryland Constitution "shows an intent that those seeking to exercise the right of referendum in this State must, as a condition precedent, strictly comply with the conditions prescribed." *Tyler v. Secretary of State*, 229 Md. 397, 402 (1962). And "where a group of the citizens of the county seek to challenge a decision made by the lawfully designated representatives of the entire body politic, they must strictly adhere to those provisions of the law which grants to them the concession of the referendum. *Gittings v. Bd. of Sup'rs of Elections for Baltimore Cnty.*, 38 Md. App. 674, 681 (1978). When they fail to do so, "the proposed referendum must fail." *Id.*

The signature page of a referendum petition must contain either "(i) a fair and accurate summary of the substantive provisions of the proposal; or (ii) the full text of the proposal." E.L. § 6-201(c). "A petition may consist of several papers, but each paper shall contain a fair summary of the Act or the part of the Act petitioned upon[.]" Howard County Charter § 211(b). As the full text of the ordinance in this case was too extensive to set out in full in the petition, appellants provided a purported summary of each portion of the ordinance, which they were contesting.

10

Although no Maryland case has interpreted the phrase "fair and accurate," as used in the Election Law Article, *Anne Arundel County v. McDonough*, 277 Md. 271 (1976), provides some helpful guidance as to this issue. In *McDonough*, the Court of Appeals considered the legality of certain language placed on the ballot as a result of a certified referendum petition. Though, there, the Court was addressing language on a ballot and not, as here, in a referendum petition, the guideline it propounded for such language applies, we believe, with equal force to both purported expressions of the public will:

> The ballot must be complete enough to convey an intelligent idea of the scope and import of the amendment. It ought not to be clouded by undue detail as not to be readily understandable. It ought to be free from any misleading tendency, whether of amplification, or omission. It must in every particular be fair to the voter to the end that intelligent and enlightened judgment may be exercised by the ordinary person in deciding how to mark the ballot.

*Id.* at 301–02 (quoting *Markus v. Trumbull Cnty. Bd. of Elections*, 259 N.E.2d 501, 504 (1970)).

The same criteria should apply to the language, in a referendum petition, summarizing the contested provisions of an ordinance, that is, that language must "be free from misleading tendency, amplification, or omission" to permit voters to exercise "intelligent and enlightened judgment" as to whether to sign the referendum petition. In short, it must be, in the words of E.L. § 6-201(c)(2)(i), "fair and accurate."

The petition at issue clearly fails to meet that standard. The petition sets out a table, at the top of the signature page, listing the base densities of five residential zoning classifications. It next introduces, under the heading "Rezoning to a Much Higher Intensity

11

Use," six specific locations affected by the ordinance. Those six locations (or individual properties) are identified by address, by neighboring locations, or by features of those locations. In each instance, the petition notes the general zoning classification established before and after the adoption of the ordinance.

Below the six specific locations is the heading "Other" followed by four paragraphs. Specifically, the second paragraph, in the petition, under the heading "Other," reads:

> Carry-over of existing zoning as of July 24, 2013 for Normandy Shopping Center (tax-map-18; grid-19, parcel-75, lots-A-C) and 12540 Clarksville Pike, Clarksville, into 2013 Comprehensive Zoning Plan.

This particular paragraph is not a fair and accurate description of what the ordinance provides—which is simply that, if the zoning plan did not change the zoning classification of a property, its zoning classification would remain unchanged—because neither Normandy Shopping Center nor 12540 Clarksville Pike (the proposed site of the Donaldson Funeral Home) is mentioned in the ordinance. Nor will the property be affected by it or appellants' referendum. In short, it was inaccurate and misleading to suggest that the ordinance will affect the zoning classification of those properties.

We can only surmise that the reason Normandy Shopping Center was specifically identified in the petition was because one of the appellants, Lisa Markovitz, challenged, in a separate proceeding, the approval of a "piecemeal" zoning change to that property, which, we stress, has nothing to do with the instant appeal or the comprehensive zoning plan. *See Markovitz v. Howard Cnty. Zoning Bd.*, No. 2420, Sept. Term 2012. As for why 12540

12

Clarksville Pike, was included in the petition, we note that it was because that property is also the subject of a separate challenge to the County's grant of a conditional use to allow a funeral home, mortuary, and parking lot to be built on that property—which also has nothing to do with the ordinance or the instant case. Presumably, both properties were named in the petitions' summary as an attempt to garner support from those Howard County voters affected by those two separate and independent cases.

Moreover, even if the ordinance did in some way affect the zoning of the two properties, the petition fails to identify the two properties' zoning classifications before and after the enactment of the ordinance, and it fails to provide any, much less, an adequate explanation of the purported impact that the referendum would have on those properties or their zoning classifications. These omissions only serve to mislead the public as to what is at stake in enacting into law the portions of the ordinance at issue.

To find another example of the petitions' failure to provide a "fair and accurate" summary of the contested provisions of the ordinance, we need only look at the third paragraph under the heading "Other," which reads:

> Definition change: "farming," **allowing the application of treated human waste** to land in zoning districts where "farming" is permitted, in accordance with law.

(Emphasis added.)

13

But the phrase "treated human waste" appears nowhere in the ordinance. Yet, appellants maintain that by including that phrase, they provided a fair and accurate representation of the following provision of the ordinance, which defines farming as follows:

Farming: The use of land for agricultural purposes, including:

* * *

F.      The transportation, storage, handling and application of fertilizer, **soil amendments**, pesticides and manure, subject to all Federal, State and Local laws[.]

(Emphasis added.)

Appellants claim that by permitting the use of "soil amendments," the ordinance implicitly permits the application of "treated human waste" on farms, which, as the circuit court noted, "appears on its face to be intended to create an emotional reaction." Remarkably, after asserting that the petition accurately represents the contested law (despite its failure to mention soil amendments, a term actually appearing in the ordinance), appellants, in their brief, state, "whether the 'farming' definition changed to be referred would allow the spreading of sludge, 'treated human waste,' or other activities dealing with sludge on these preservation properties is not before the court. **Such a question is speculative**, not an issue with an alive controversy, and thus not reviewable. **It would be misleading to the voter to speculate what this change means**." (Emphasis added.)

We agree that speculating that the term "soil amendments" may mean "allowing the application of treated human waste" to land in zoning where farming is permitted would be

14

"misleading" to the voter, and, thus, in our own view, did substantially compromise the fairness and accuracy of the substance of appellants' petition. But appellants do more than speculate. They actually declare categorically that "farming," as defined by the ordinance, allows the application of this product of human physiology. And, by stating that allowing the "application of treated human waste" is a consequence of the ordinance in question, the fairness and accuracy of the petition is further impaired.

Moreover, under the heading: "Rezonings to Much Higher Intensity Use," the petition presents a summary of various provisions of the ordinance. That heading is imprecise and misleading. In fact, as the circuit court observed, the various density and exchange options in the contested portions of the comprehensive zoning plan may actually cause properties to have an intensity of use that is not "much" higher than their previous classifications.

An example of how that heading might mislead is the fifth paragraph under that heading, which states:

> Fulton: From RR-DEO to R-ED/MXD-3 (**with special conditions**) potentially allowing residential, office, retail, commercial, and public facility / "open space" uses: 91.25 acres at 11595 Scaggsville Road (aka "Maple Lawn South") south of Rt 216, across from the public school complex.

(Emphasis added.)

The phrase "special conditions" fails to inform the Howard County voters that the ordinance limits the development potential of this Fulton property to a density that is actually less than that which would otherwise be permitted under a standard R-ED/MXD-3 zoning classification. The petition defines RR-DEO in the table at the top of the signature page but

15

does not define R-ED/MXD-3 or the special version of that classification designated for the Fulton property. Because the petition fails to define a standard R-ED/MXD-3 zoning classification or the modified version of that classification designated for this Fulton property, the petition's signatories had no basis upon which to judge whether the zoning applicable to the Fulton property would differ by a "much higher" degree of intensity from the previous zoning classification or how the new zoning classification compared to another property designated as a standard R-ED/MXD-3. The heading "Rezonings to a Much Higher Intensity Use," without more, prevented potential signatories from making an intelligent and enlightened judgment about whether to sign the petition.

Finally, we conclude by conceding that we have addressed only a few of the inaccuracies that appellees claim permeate appellants' petition. Unfortunately, the time constraints of this expedited appeal have left us little time to address what we agree are other petitionary inaccuracies. But, on the other hand, we have addressed and highlighted several provisions of the petition that we believe are so misleading, imprecise, and inaccurate that they left the Election Director with little choice but to deny certification.

## VI.

Appellants claim that their due process rights were violated because the Election Director provided no more information to them than his conclusion that their petition was not fair and accurate and, further, that "post hoc rationalization of counsel to support an agency's decision are insufficient." Appellants stress that "the key to due process," involving an

16

administrative agency, is that they be "duly notified" of an agency's decision, that they have a chance to be "fully heard," and that the agency's decision be "based on evidence."

Admittedly, we are deeply concerned that, by not specifying, with particularity, the deficiencies found in the petition, the Board of Elections leaves the door open to sidelining a referendum petition until it is too late to refer it to referendum. But there is no evidence that that occurred here. In fact, almost all of the delays in obtaining a circuit court decision in this case, as we previously pointed out, were due to appellants' multiple premature interlocutory appeals and certiorari petitions. Although we have reservations about whether the law concerning the substance of the Election Director's determination and notification adequately serves a necessary and vital public procedure, the misrepresentations in the petition were, in our view, so manifest and substantial that it is inconceivable that appellants did not know that their summary was not a fair and accurate representation of the contested provisions of the ordinance.

**JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

17